# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| HELEN KINCHELOE, et al. | § | |
| | § | |
| V. | § | CAUSE NO. A-09-CA-010 LY |
| | § | |
| DAVID CAUDLE, et al. | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

Before the Court are: Defendant City of Bertram's Motion for Summary Judgment, filed on October 29, 2009 (Clerk's Doc. No. 64); Plaintiffs' Response, filed on November 9, 2009 (Clerk's Docket No. 71); Defendant's Reply, filed on November 20, 2009 (Clerk's Docket No. 80); Defendant's Second Motion for Summary Judgment, filed on January 15, 2009 (Clerk's Docket No. 87); Plaintiffs' Response and Supplemental Brief filed on January 22, 2010 (Clerk's Docket Nos. 90 & 92); and Defendant's Reply Briefs, filed on February 2 and 5, 2010 (Clerk's Docket Nos. 99 & 102).

The Magistrate Court submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

### I. PROCEDURAL BACKGROUND[1]

On January 8, 2009, Plaintiffs Helen Kincheloe, David Kincheloe, William Bell, David Thomas, Melinda Copeland, Kristen Bergeson, and L.O. Pogue, individually and in his official

---

[1] A more detailed factual background of this case cane be found in the undersigned's Report and Recommendation of October 16, 2009, at pp. 1-6. See Clerk's Docket No. 53 at 1-6.

capacity as Mayor Pro Tem of Bertram, ("Plaintiffs") filed the instant civil rights lawsuit under 42 U.S.C. §1983 against David Caudle, individually and in his official capacity as Police Chief of Bertram, Texas ("Chief Caudle"), JoAnn Stephens, individually and in her official capacity as Mayor of Bertram, Texas and the City of Bertram, Texas (collectively "Defendants"). Plaintiffs' Original Complaint alleged a plethora of Federal Constitutional and state law claims including: (1) Helen and David Kincheloes' Fourth Amendment claims of unreasonable search and seizure and excessive force; (2) Helen and David Kincheloes' takings claim; (3) Helen and David Kincheloes' state law claim of intentional infliction of emotional distress; (4) William Bell's Fourth Amendment claim of excessive force and unreasonable searches and seizures; (5) William Bell's state law claims of intentional infliction of emotional distress and assault under Texas law; (6) Plaintiffs' allegations that their rights to free speech under the First Amendment of the United States Constitution and under the Texas Bill of Rights were violated; and (7) Mayor Pro Tem L.O. Pogue's First Amendment retaliation claim under the First Amendment and right to counsel claim.

On March 4, 2009, the Defendants jointly filed a Motion for Judgment on the Pleadings requesting that the case be dismissed in its entirety. *See* Clerk's Docket No. 10. On April 2, 2009, the Individual Defendants filed Motions for Summary Judgment, also urging the Court to dismiss Plaintiffs' claims. *See* Clerk's Docket Nos. 19 & 20. After these motions were referred to the undersigned, a Report and Recommendation was submitted recommending that the motions be granted in part and denied in part. *See* Clerk's Docket No. 53. On December 7, 2009, that recommendation was modified in part, rejected in part and adopted in part by Judge Yeakel. *See* Clerk's Docket No. 82. Specifically, Judge Yeakel dismissed the following claims:

- Helen Kincheloe's Fourth Amendment unlawful-seizure claim alleged against Chief Caudle;

- Plaintiffs David Kincheloe, Helen Kincheloe, and David Thomas, Melinda Copeland, and Kristen Bergeson's federal First Amendment claims and Texas Constitutional claims against Defendant Stephens;

- Plaintiffs' substantive due process claims;

- the Kincheloes and Bell's Texas state law intentional infliction of emotional distress claims alleged against Chief Caudle;

- Plaintiffs' claims against Chief Caudle and Defendant Stephens in their official capacities pursuant to §1983;

- Bell's excessive force claim against Chief Caudle;

- Pogue's First Amendment retaliation claim, Sixth Amendment right to counsel claim against Defendant Stephens, and First and Sixth Amendment claims against the City;

- Bell's claim of assault against Chief Caudle; and

- Plaintiffs' First Amendment and Texas Constitutional claims.

On November 18, 2009, the Plaintiffs filed their First Amended Complaint asserting the same claims as alleged in their Original Complaint with the exception of adding an additional claim against the City for improper hiring and retention of Chief Caudle. With this new claim added, the claims remaining in the case after the above-rulings are:

- David Kincheloe's § 1983 Fourth Amendment wrongful seizure claim against Chief Caudle;

- David Kincheloe's procedural due process claims against Chief Caudle and the City;

- Bell's Fourth Amendment illegal search and seizure claim against Chief Caudle and the City; and

- all of the Plaintiffs' improper hiring and retention claim against the City.

On January 15, 2009, the City filed its Second Motion for Summary Judgment (Clerk's Docket No. 87) reasserting its previous arguments and raising an additional argument that Plaintiffs' new claim for improper hiring and retention should be dismissed.

## II. STANDARD OF REVIEW

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary-judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary-judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary-judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458.

Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III. ANALYSIS

As noted above, the only remaining claims against the City in this case are David Kincheloe's Fourth Amendment wrongful seizure and procedural due process claims, William Bell's Fourth Amendment illegal search and seizure claims and all Plaintiffs' claims for improper hiring and retention of Chief Caudle. The City contends that it is entitled to summary judgment on Plaintiffs' Fourth Amendment and procedural due process claims because Plaintiffs have failed to demonstrate that a City policy or custom was the moving force behind the alleged constitutional violations. The City further argues that it is entitled to summary judgment on Plaintiff's improper hiring and wrongful retention claims because the Plaintiffs have failed to demonstrate that the City was "deliberately indifferent" to the constitutional rights of its citizens.

### A. Municipal Liability under Section 1983

"[A] municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). Rather, "a plaintiff seeking to impose liability on a municipality under § 1983 [is required] to identify a

5

municipal policy or custom that caused the plaintiff's injury." *Id.* (citing *Monell v. New York City Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978) (internal quotation marks omitted)). "The plaintiff must . . . demonstrate that . . . the municipality was the moving force behind the injury alleged," which requires him to prove a "direct causal link between the municipal action and the deprivation of federal rights." *Id.* at 404 (internal quotation marks omitted). To prove this causal link, a plaintiff may demonstrate either an express policy or a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016 (1985).

In addition to identifying a formally adopted municipal policy or informal custom and practice, a plaintiff may also demonstrate municipal liability based on a single act by an official with final policymaking authority, or a custom or practice of inadequate training, supervision, discipline, screening or hiring. See *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) ("it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances"); *City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (holding that inadequate training may serve as a basis for municipal liability where the failure to train amounts to deliberate indifference); and *Brown*, 520 U.S. 397, 403 (1997) (holding that inadequate screening of an applicant may trigger municipal liability under § 1983 where deliberate indifference is demonstrated).

In the instant case, Plaintiffs contend that the City should be held liable under § 1983 because (1) the City's decision to hire and retain Chief Caudle demonstrated deliberate indifference, and

6

(2) the constitutional violations in this case were committed by final municipal policymakers (Chief Caudle and Mayor Stephens).[2] The Court will address these allegations below.

A.  **Wrongful Hiring and Retention Claims**

Plaintiffs' Amended Complaint alleges that the City breached its legal duty owed to Plaintiffs to hire and retain "only employees, who, as a matter of practice and custom, do not regularly violate constitutional mandates." First Amended Complaint at 12-13. Plaintiffs argue that the City breached this duty, intentionally and through deliberate indifference, by hiring and retaining Defendant Caudle, "who was not only not competent to serve as City Chief of Police, but not competent to serve as a police officer, because of his propensity for taking unconstitutional actions against people, particularly in matters of unreasonable search and seizure, use of excessive force. . . ." First Amended Complaint at 13. The City argues that Plaintiffs' newly added claims of improper hiring and retention of Chief David Caudle should be dismissed because Plaintiffs have failed to demonstrate that the City was deliberately indifferent to the constitutional rights of its citizens.

   1.  **Wrongful Hiring Claim**

Plaintiffs allege that the City was deliberately indifferent to the constitutional rights of its citizens when the City originally hired Caudle as a municipal police officer. In *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397 (1997), the Supreme Court addressed the issue of whether a municipality can be subject to liability under § 1983 for a sheriff's *single* decision to

---

[2]In Plaintiffs' initial Response to Defendant's Motion for Summary Judgment, Plaintiffs also argued that the City should be liable under § 1983 because it had a custom and practice of permitting constitutional violations. Plaintiffs appear to have abandoned this argument in their latest brief filed with the Court. *See* Plaintiffs' Supplement to Their Response to Defendant's MSJ. Thus, the Court will only address the two theories of municipal liability listed above.

hire a deputy after failing to perform an adequate background check of the applicant. In order to find a municipality liable under such a theory, the Court determined that:

> A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference."

*Id.* at 411. Thus, a finding of culpability cannot depend on "the mere probability that any officer inadequately screened will inflict any constitutional injury." *Id.* at 412. "Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." *Id.*

In the specific facts before the Supreme Court in *Brown*, the Court concluded that the County was not liable for the sheriff's isolated decision to hire the police deputy without adequate screening, because the plaintiff failed to demonstrate that his decision reflected "a conscious disregard for a high risk that [the deputy] would use excessive force in violation of respondent's federally protected right. *Id.* at 415-16. The Court emphasized that the fact that the deputy had pled guilty to traffic offenses and other misdemeanors may have made him "an extremely poor candidate for reserve deputy," but it did not necessarily show that the deputy's later use of excessive force was a plainly obvious consequence of the decision to hire him. In other words, the Court explained that it was not sufficient for the plaintiff to show that the sheriff had read the deputy's record and had thus hired him with knowledge of his background. While such a decision may have reflected deliberate indifference to the deputy's record, it did not necessarily demonstrate deliberate indifference to a plaintiff's "constitutional right." *Id.* at 415. That is, the sheriff's hiring decision could not have been

8

"deliberately indifferent" unless in light of that record the deputy's use of excessive force would have been a plainly obvious consequence of the hiring decision. Because there was insufficient evidence on which a jury could base a finding that the sheriff's decision to hire the deputy reflected conscious disregard of an obvious risk that use of excessive force would follow, the Supreme Court held that the District Court erred in submitting the plaintiff's inadequate screening claim to the jury.

Based upon the Supreme Court's holding in *Brown*, for the City to be held liable for the single decision to hire David Caudle, Plaintiff must demonstrate that adequate scrutiny of Caudle's background would have led a reasonable official to conclude that the plainly obvious consequence of hiring Caudle would be to violate Plaintiffs' Fourth Amendment and procedural due process rights. Plaintiffs argue that Chief Caudle's documented history of abusing his authority and the fact that he was ultimately fired from his job as a corrections officer with Travis County for repeatedly using excessive force demonstrates that Chief Caudle's violations of Plaintiffs' constitutional rights in this case was a "plainly obvious consequence" of hiring him as a police officer.

Plaintiffs have presented the Court with summary judgment evidence showing that during Caudle's employment with Travis County Sheriff's Department as a Corrections Officer from 1988-2002, Caudle was disciplined nine times for excessive force and offensive behavior toward inmates and other corrections officers. Caudle was ultimately fired by the County in 2002 after Caudle was found guilty of having used excessive force on multiple occasions. *See* Captain Hill Memorandum, Exhibit B to Plaintiff's Response to City's Second MSJ (stating that he had received three separate accusations of excessive force against Caudle over a span of a few months). The internal investigative reports into the excessive force incident concluded that Caudle was guilty of "extremely poor judgment in a force situation" and that he was "unprofessional in his actions and statements." Balagia Memorandum at p.1, Exhibit B to Plaintiff's Response to Defendants' Second MSJ.

9

Specifically, the report found that during an attempt to restrain an inmate for a court appearance, Caudle was guilty of grabbing the inmate "by his testicles and penis" and began to "violently squeeze and twist" while exclaiming, "what do we have here, another stupid motherfucker?" See Exhibit B to Plaintiffs Response to Defendant's Second MSJ. The reports concluded that Caudle was guilty of "excessive or inappropriate use of force" and that the use of force was "totally unacceptable, especially since the inmate was restrained." *Id.* In Caudle's termination letter, Travis County Sheriff Margo Frasier stated the following:

> It is clear to me that you used excessive force on both of these occasions. Its is also clear that in the incident on February 5, 2002, you not only used excessive force, you knew the use of this type of force was not sanctioned by the Travis County Sheriff's Office, knew the proper technique to use, and chose to use a particularly demeaning technique. To make matters even worse, although the before mentioned is horrendous in itself, you made a derogatory comment to the inmate just prior to using the force which indicates to me that you were being vindictive in use of the force. There is no place in the Travis County Sheriff's Office for a person who not only uses excessive force, but also seems to delight in it. Your employment is terminated.

April 22, 2002 Termination Letter, Exhibit B to Plaintiffs' Response to Defendant City's Second MSJ.[3]

---

[3]Defendant objects to Exhibit B to Plaintiffs' Response to Defendant's Second MSJ (Clerk's Docket No. 90) and Exhibit C to Plaintiffs' Supplemental Response (Clerk's Docket No. 92) consisting of letters and Memoranda from the Travis County's Sheriff's Department regarding David Caudle's disciplinary issues and termination from the department. Defendant contends that such documents are not authenticated, are not sworn testimony and are inadmissible under Federal Rule of Civil Procedure 56. Defendant's objections are overruled. Summary judgment evidence is not required to be in a format that would be admissible at trial, but rather, the party offering the summary judgment evidence must be able to prove the underlying facts at trial with admissible evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986); *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir.1990). "In reviewing evidence favorable to the party opposing a motion for summary judgment, a court should be more lenient in allowing evidence that is admissible, though it may not be in admissible form." *Tullous v. Texas Aquaculture Processing Co.*, 579 F. Supp.2d 811, 817 (S.D. Tex. 2008) (citing *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1987)). The documents at issue could be easily authenticated through a proper affidavit or by testimony at trial in this case. See, e.g., *Mackey v. Owens*, 182 F.3d 915, 1999 WL 423077, * 1 (5th

While it is unclear whether the City ever reviewed the-above termination letter (or related Travis County documents), the City admits that it was fully aware of Caudle's "prior termination and the circumstances surrounding it" before the City made the decision to hire Caudle as a police officer. See Defendant's Second MSJ at p. 15. Chief Caudle testified in his deposition—and the City agrees—that Caudle disclosed his termination from Travis County with the City Council and the Betram Chief of Police at the time. See Caudle Deposition at p. 20 (Appendix A to Defendants' Second MSJ), and Defendant's MSJ at p. 13-15. In his sworn deposition, Chief Caudle testified that Chief Hosier "didn't seem to have a problem with—with the information that I had given him" and added that "I'm sure that he checked out himself because he said he had made some calls. . . ." Caudle Deposition at p. 21. Accordingly, the City was clearly aware that Caudle had been terminated from his position as a corrections officer for abusing his authority, but made the conscience decision to hire him as a police officer anyway.

Additionally, there is no evidence in the record that the City ever further investigated Caudle's termination to discover the actual circumstances surrounding his firing. There is no evidence that the City ever requested a termination report from the Texas Commission on Law Enforcement Standards (TCLEOSE)[4] before it decided to hire Caudle as a police officer. The failure

---

Cir. June 2, 1999). Alternatively, the documents could be admissible as self-authenticating public documents under Federal Rule of Evidence 902(1) since they are certified under seal. Further, the documents could be considered a public record and thus their authenticity would be satisfied under Federal Rule of Evidence 901(7), and would fall under the public records exception to the hearsay rule pursuant to Federal Rule of Evidence 803(8). Based upon the foregoing, the Court overrules the Defendants' objections.

[4]Texas law requires an employer to submit a report to the TCLOESE which includes "an explanation of the circumstances under which the individual . . . was terminated." 37 Tex. Admin. Code § 217.7(g)

to investigate or follow up in any manner a police applicant's admission that he was terminated for using excessive force could also support a finding that the City was deliberately indifferent in this case. Plaintiffs have presented the Court with sufficient evidence to create a fact issue as to whether a full review of Caudle's record should have prompted the City to conclude that Caudle's constitutional violations in this case "would be a plainly obvious consequence of the hiring decision." *Brown*, 520 U.S. at 412-13.

### 2. Negligent Retention/Promotion Claim[5]

Plaintiffs next argue that the City's decision to retain Caudle as a police officer and ultimately promote him to the position of Chief of Police was also deliberately indifferent to the rights of its citizens. Plaintiffs emphasize that the City's decision to promote Caudle to the Chief of Police "was a far more egregious hiring decision than hiring him as a subordinate officer." Plaintiffs' Response to Defendants' MSJ at 4. "In theory, at least, he might have been restrained as a lower level officer from abusing his authority again. When he was hired as Chief, however, he was given free rein within the department and over the department, making it a hiring decision that demanded more concern from the City." *Id.* Like the negligent hiring claim, Plaintiff must demonstrate that the City's decision to retain Caudle as a police officer and ultimately to promote him to Police Chief was deliberately indifferent to the rights of persons with whom Caudle would

---

[5]The Parties' Briefs in this case also discuss Plaintiffs' "failure to supervise/discipline" claim. However, the Plaintiffs' Amended Complaint does not allege a claim for failure to supervise or discipline and the Court will therefore not address such a claim. It should be noted, however, that this finding has no effect on Plaintiffs' case since any potential "failure to supervise/discipline" claim would be based on the same theory as Plaintiffs' Negligent Retention claim, *i.e.*, that Caudle was wholly unsuited for police work and that the City failed to do anything about it.

come into contact and that there was a causal link between the alleged inadequate retention and Plaintiffs' injuries. See *Abdeljalil v. City of Fort Worth*, 55 F. Supp.2d 614, 620 (N.D. Tex. 1999).

In support of their claims, Plaintiffs point out that before the City made the decision to promote Caudle to the position of Police Chief in April 2007, it was not only aware of Caudle's termination from Travis County for using excessive force (as discussed above), but the City was also aware of numerous citizen complaints against then Sergeant Caudle regarding his continued practice of abusing his authority. For example, Raymond Baladez, a City Alderman, has asserted in his deposition that he personally received 64 separate complaints about Caudle's "unprofessionalism, harassment and threats." Baladez Deposition at 14, Exhibit C to Plaintiff's Response to Second MSJ. Mr. Baladez further testified that he complained to the Chief of Police at the time, Wally Wallace, about (then Sgt.) Caudle's misconduct. Despite the plethora of citizen complaints against Caudle, the City nevertheless promoted him to Police Chief. While it is unclear whether the City was aware of all of the alleged complaints against Caudle at the time it decided to promote him to Police Chief, the evidence is clear that the City made the decision to retain Caudle as Police Chief despite numerous complaints against him, including those complaints at issue in the instant lawsuit. See *Butler v. Nance,* 2002 WL 1042133 at * 5 (N.D. Tex. May 21, 2002) (finding that there was sufficient evidence to create a fact issue as to training/retention claim where plaintiff presented evidence that officer had used excessive force on multiple occasions after he was hired as a police officer).[6] Based upon the foregoing, the Court finds that Plaintiffs have presented sufficient

---

[6]"Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984).

summary judgment evidence to create at least a fact issue as to whether the City was deliberately indifferent to the rights of its citizens when it decided to retain Caudle as a police officer and ultimately promote him to the position of Police Chief. Accordingly, the City's Motion for Summary Judgment should be denied with regard to Plaintiffs' wrongful retention claim.

**B.    Were the Individual Defendants Final Policymakers?**

Plaintiffs contend that the City should also be held liable under § 1983 because the alleged constitutional violations in this case were committed by municipal policymakers Chief Caudle and Mayor JoAnn Stephens. First, the Court notes that Plaintiffs' First Amendment claims against Mayor JoAnn Stephens have been dismissed from this lawsuit and thus there are no claims left in this case against Mayor Stephens in her Individual Capacity. Plaintiffs' claims against the City based on Mayor Stephens' actions must also be dismissed. *See Becerra v. Asher*, 105 F.3d 1042, 1047-48 (5th Cir.) ("Without an underlying constitutional violation, an essential element of municipal liability is missing")*, cert. denied*, 522 U.S. 824 (1997). The Court will therefore only address whether the summary judgment evidence demonstrates that Chief Caudle is a final policymaker on law enforcement matters for the City.

"It is well-established that a single unconstitutional action by a municipal actor may give rise to municipal liability if that actor is a final policymaker." *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008), *cert. denied*, 129 S.Ct. 1669 (2009). *See also*, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) ("it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances"). "A court's task is to 'identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or

statutory violation at issue.'" *McMillian v. Monroe County*, 520 U.S. 781, 784-85 (1997) (quoting *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989)). The inquiry focuses on "whether the government officials are final policymakers for the local government in a particular area, or on a particular issue," and depends on an analysis of relevant state and local law. *Id.* at 785.

The City argues that the Council of Alderman, not the Mayor or the Police Chief, are the final policymakers for the City of Betram. The City contends that Texas law places responsibility for the adoption of municipal policy with the alderman, not the Mayor or Police Chief. The City relies on Section 22.042(c) of the Local Government, which provides that: "The mayor shall give to the governing body [the Council of Alderman] any information, and shall recommend to the governing body any measure, that relates to improving the finances, *police*, health, security, cleanliness, comfort, ornament, or good government of the municipality." TEX. LOCAL GOV'T CODE § 22.042(c) (emphasis added). In addition, the City contends that Betram's written "Police Department Policy" also establishes that the Police Chief is not the final policymaker in matters of law enforcement. City's MSJ at p. 20. The City relies on Article II, Section I of the Policy which provides that "[r]ecommendations, grievances and changes to personnel or Departmental policies should be exercised through the current Mayor, and, at his/her appointment, through a Law Enforcement Committee established and mandated through the City Council." See Exhibit B to Appendix to Defendant's MSJ.

Despite the City's arguments, these provisions do not negate the possibility that the Mayor and the Police Chief are the final policymakers for the City for law enforcement purposes. First, the Court emphasizes that the relevant inquiry is whether Chief Caudle was the final policymaker for Betram in the particular area of law enforcement, and specifically with regard to search and seizure

15

and due process issues. *See McMillian*, 520 U.S. at 785 (noting that inquiry is whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue, not whether they are final policymakers for "every type of official action they engage in"). *See also*, *St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) ("[T]he challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy *in that area* of the city's business"). The City can point to no provision in the Local Government Code or the written "Police Department Policy" which states that the Chief of Police is not the final policymaker for day-to-day law enforcement in the City. See *Zarnow v. City of Wichita Falls,* 640 F. Supp.2d 844, 849 (N.D. Tex. 2009) (noting that the City Charter and Ordinances do not negate the authority of the Police Chief to promulgate policy). In fact, the written Police Department Policy—upon which the City relies—specifically provides that:

> These policies are established by the Mayor and the Chief of Police of the City of Betram, Texas. Amendments, revisions, and new policies must be approved by the Mayor and the Chief of Police and Submitted to the City Council for final approval. Authority for the administration is delegated to the Chief of Police.
>
> ***
>
> The Chief of Police shall be specifically charged with the supervision of all members of the Department and shall be held strictly responsible for the conduct and efficiency of all such members for the general good order of the Department.
>
> ***
>
> The Chief of Police, in the exercise of his duties shall have the power to establish and enforce rules and regulations for the government of the members and employees of the Department, which rules shall, however, be consistent with the ordinances of the City and the laws of the State of Texas.

Police Department Policy at Articles I, II and II(a).

Moreover, in addition to written policies establishing final policymaking authority, an official may be considered a final policymaker by virtue of the law enforcement powers he or she possesses in practice. *See Zarnow*, 640 F. Supp.2d at 849 (finding that city's police chief was potential final policymaker for city where informal delegation of final policymaking authority gave the Chief implied authority to formulate and enforce policy). In the instant case, Plaintiffs have presented evidence that the Mayor permitted Chief Caudle to wield ultimate power over the police department and even overlooked Chief Caudle's misdeeds when she decided not to act on citizen complaints against Caudle. *See* Krenek-Balzen Dep. at p. 19, Exhibit D to Plaintiffs' Response to Defendant's Secon MSJ. The Court finds that the Plaintiffs have provided the Court with sufficient summary judgment evidence to create a fact issue with regard to whether Chief Caudle was a potential final policymaker for the City with regard to the specific law enforcement issues at issue in this case.

**C.     Conclusion**

Based upon the foregoing, the Court finds that Plaintiffs have submitted sufficient summary judgment evidence to create triable factual issues with regard to (1) David Kincheloe's Fourth Amendment wrongful-seizure and procedural due process claims against the City, (2) William Bell's Fourth Amendment illegal-search-and-seizure claim against the City; and (3) Plaintiffs' claim against the City for improper hiring and retention of Chief Caudle. Accordingly, the City's Motions for Summary Judgment should be denied.

**IV.  RECOMMENDATION**

The Court HEREBY RECOMMENDS that the District Court DENY both the City of Bertram's Motion for Summary Judgment (Clerk's Doc. No. 64), and the City's Second Motion for Summary Judgment (Clerk's Docket No. 87).

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 22nd day of March, 2010.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE